Ray v. Jeffries.

---

CASE 52—PETITION ORDINARY—DECEMBER 1.

# Ray v. Jeffries.

APPEAL FROM HARDIN CIRCUIT COURT.

1. THE RULE THAT A NEW TRIAL SHALL NOT BE GRANTED ON ACCOUNT OF THE SMALLNESS OF DAMAGES, in an action for an injury to the person or reputation, does not apply to the assessment of the actual pecuniary damages resulting directly from the wrong; and when the damages can be measured, and the injury is such as to demonstrate that, as to the damages, the proof and the law of the case were disregarded, a new trial ought to be granted.

2. MASTER AND SERVANT.—Where an employe represents and undertakes that he possesses the knowledge and skill requisite to operate or use machinery or implements of a dangerous character, and which, if not properly used, are liable to cause injury, he, and not the employer, is responsible for consequences resulting to himself from his unskillful or negligent handling of them.

The plaintiff was employed to blast rock in the defendant's mine or well on account of his professed knowledge and skill in the business, at a fixed price per foot, which was increased when a more dangerous powder was substituted. The injury to the plaintiff resulted from his undertaking to stir the material in a cap used in connection with the powder without first informing himself whether it could be safely

Ray v. Jeffries.

done or not. The defendant informed the plaintiff that he had no knowledge or skill on the subject of handling the powder he furnished. *Held*—That it was the duty of the plaintiff to inform himself how to safely handle the powder if he did not actually know, and that he is, therefore, not entitled to recover.

J. P. HOBSON, WILSON & SPRIGG and JOHN L. SCOTT for APPELLANT.

1. Master is responsible to servant for injuries to servant caused by the use of dangerous machinery or materials when the servant is not informed of its dangerous nature. Ignorance on part of master will not excuse, and master is bound to inform his servant of the dangers incident to his employment. (Wood on Master and Servant, secs. 348, 356; Cooley on Torts, 555; Smith v. Oxford Iron Co., 36 Am. Rep., 535; Parkhurst v. Johnson, 45 Am. Rep., 28; Spelman v. Fisher Iron Co., 56 Barb., 151.)

2. A new trial should be granted where the jury, from passion or prejudice, has awarded too much or too little damage. (1 Sutherland on Damages, 810; 3 Waits' Practice, 413; Amitage v. Halsey, 4 Q. B., 917; Richards v. Sandford, 2 E. D. Smith, 349; McDonald v. Walter, 40 New York, 551; Civil Code, sec. 341; Bayly v. Cincinnati, 1 Handy, 438; Taylor v. Howser, 12 Bush, 465.)

MONTGOMERY & POSTEN for APPELLEE.

1. Materials furnished by master for use of servant must be known by master to be dangerous, and it must be so alleged to constitute a cause of action. (Sanders on Negligence, 95; Commonwealth v. Steffee, 7 Bush, 163; Sullivan's Adm'r v. Lou. Bridge Co., 9 Bush, 89; Wood on Master and Servant, sec. 366.)

2. A defective pleading is not cured by verdict where the party who obtained the verdict is seeking to set it aside. (Chitty on Pleadings, 713.)

3. Servant receiving injury incident to the business in which he is engaged, and having the same knowledge as the master as to the danger, cannot recover. (Sullivan v. Bridge Co., 9 Bush, 89; Wood on Master and Servant, sec. 366.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant brought this action to recover for an injury to his person while in the employ of appellee mining, but though the verdict of the jury was in his favor, they fixed the damages at only one cent.

Although it is provided in section 341, Civil Code,

that "a new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation, nor in any other action in which the damages equal the actual pecuniary injury sustained," yet it has been held by this court (Taylor v. Howser, 12 Bush, 465) that "the reason of this rule does not apply to the assessment of the actual pecuniary damages resulting directly from the wrong," and that when the damages can be measured, and the injury is such as to demonstrate that as to the damages the proof and the law of the case were disregarded, a new trial ought to be granted.

The injury received by appellant was a severe and permanent one, and the damages actually proved were capable of being measured, and the verdict should have been set aside and a new trial granted, if he was entitled to recover at all. And whether he was or not is the question before us.

From the pleadings and evidence in the case, it appears that appellant was for some time, during the year 1884, employed by appellee in blasting rock, the ordinary blasting powder being used. But appellee mentioned to appellant, about the close of operations of that year, that he intended to procure material of greater explosive power, and was informed by appellant he had experience in the use of giant powder in blasting rock. Before commencing operations in the spring of 1885 appellee procured a quantity of what is called Atlas powder, in the composition of which a considerable per cent. of nitro-glycerine is used, and accompanying the powder, and to be used with it, were caps or exploders strongly charged with fulminate,

and also fuse. The injury to appellant was caused not while he was actually engaged in blasting, though this would make no difference, nor by the explosion of the powder, which was in cartridges, but by the explosion of one of the caps, caused by him picking into it with a stick in order to ascertain whether the material it contained was fit for use.

The lower court instructed the jury that it was the duty of the defendant in operating the mining business to ascertain and know the character and quality of the material used for blasting, that is, whether or not it was dangerous, and to impart such information to the plaintiff, and if he failed to obtain such information, or did obtain it and failed to impart it to the plaintiff, and he was injured by such failure, the defendant is liable. But if plaintiff knew of the dangerous character of the caps, then the defendant is not liable. They were also instructed that if the plaintiff did not know of the dangerous character of the caps, the defendant cannot be excused for his failure to know and inform plaintiff of the danger, unless he used reasonable care in obtaining and imparting such information. There is another instruction based upon the hypothesis that the defendant knew and intentionally concealed the information of the danger from the plaintiff. But as there is no evidence whatever to support such an instruction, it need not be considered.

The first instruction is objectionable principally because it is abstract and misleading.

There is no question that both parties knew of the dangerous character and quality of the material used in this case; for any one of ordinary intelligence knows

that any explosive containing nitro-glycerine is extremely dangerous, and there is no pretense on the part of the plaintiff that he was ignorant on the subject.

The second instruction is wrong, because it might be, and probably was, understood by the jury as requiring the defendant to know and to inform the plaintiff, not merely of the dangerous character of the caps, but of the manner of using them so as to prevent any injury.

It is not alleged or shown that either the cartridge in which the powder was contained, the caps containing the fulminate or the fuse, was defective. And, consequently, the simple question is, whether an employer is bound in every case to know not merely the dangerous character of implements or agencies used in his business, but also the peculiar construction and mode of handling each part so as to make it most efficient, and to avoid injury to his employe, whether the latter is, or professes and undertakes to be, skilled in that branch of the business or not. To require of an employer such knowledge and skill, and impose upon him such obligation, would, in many cases, put a stop to business.

The owner of a mill operated by steam is bound to use due diligence and care in providing machinery free from defects, and a boiler capable of sustaining the pressure necessary to move it; but in regard to the mode of raising and regulating the steam, so as to prevent an explosion and consequent injury, the employer is not required, but the engineer is required to know, and any injury the latter may sustain by reason of his want of the knowledge and skill he undertakes to possess is to be attributed to himself alone.

The correct rule is, that when an employe represents and undertakes that he possesses the knowledge and skill requisite to operate or use machinery or implements of a dangerous character, and which, if not properly used, is liable to cause injury, he and not the employer is responsible for consequences resulting to himself from his unskillful or negligent handling of it.

In this case the plaintiff represented that he was a well-digger and blaster, and had used what is called Judson's Blasting Powder, containing a certain, though, as he testifies, not as large a per cent. of nitro-glycerine as the Atlas powder, and had used the caps and fuse in connection with it. On the other hand, the defendant informed the plaintiff he had no skill or knowledge on the subject. The defendant was employed to blast the rock in the defendant's mine or well on account of his professed knowledge and skill in the business, at a fixed price per foot, and the price was agreed to be increased when the more dangerous powder was substituted.

The injury to the plaintiff resulted from his own negligence in undertaking to stir the material in the cap, without first informing himself whether it could be safely done or not, as he testifies could be and had been done by him with the caps used in connection with the Judson powder.

There is proof by the merchant who sold the material to the defendant that he at the time gave him a pamphlet containing directions for the use of it. There is no question but such a pamphlet was at some time given to him, but it must have been done before the purchase. But whether at the time or before the

sale, the evidence is that the plaintiff at one time had the same pamphlet in his possession, and could have informed himself of the nature and safe mode of using the Atlas powder. We do not, however, regard this as material, for he represented and agreed he possessed the skill and knowledge requisite to use powder containing nitro-glycerine and the cap accompanying it, and demanded increased price per foot on account of the increased risk; and it was his duty to inform himself, if he did not actually know, how to safely handle it; for the defendant did not know, or agree to inform him, how to do so.

Being satisfied from the uncontroverted evidence in this case and the law applicable to it, that the plaintiff was not entitled to a verdict, the judgment, appellee not complaining, must be affirmed.