## Cincinnati, New Orleans & Texas Pacific Railway Company, et al. v. Winningham's Administrator.

(Decided December 16, 1913).

### Appeal from Pulaski Circuit Court.

1. Railroads—Employees Constructing Tipple Across Track—Duty to Warn—Peremptory Instruction.—Where a coal company, by authority of the railroad, is engaged in constructing a tipple across its track and employs five men regularly and fifteen or twenty men occasionally, and their duties are such as to require them to work in close proximity to the track and frequently to cross the track, and the work has been going on for a period of about ten days, the railroad is charged with notice of the presence of the workmen at that point and with the duty of giving warning of the approach of trains; and is liable in damages for the death of one of the employees at the tipple caused by its failure to give such warning.

2. Railroads—Personal Injury—Action for Damages—Contributory Negligence—Question for Jury.—In an action by the administrator of a person killed by a train approaching a coal tipple in the construction of which decedent was employed, evidence examined, and contributory negligence of the decedent held to be a question for the jury.

3. Appeal—Evidence—Not Prejudicial.—In an action against a railroad company by the administrator of an employee of a coal company who was killed by one of defendant's trains while engaged in building a tipple across the tracks of the defendant, evidence of the failure of the company to give warning of the approach of the train at crossings in the neighborhood of the tipple held not prejudicial in view of the fact that the court confined plaintiff's right to recover to the failure to give warning of the approach of the train to the tipple.

4. Railroads—Warning Signals—Duty — Instructions.— Where the facts are admitted, the question of the duty to warn is for the court.

O. H. WADDLE & SONS and JOHN GALVIN for appellants.

ROBERT HARDING and R. B. WADDLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages against the Cincinnati, New Orleans & Texas Pacific Railway Company and H. E. Britton, plaintiff, J. L. Wright, as administrator of W. B. Winningham, recovered a verdict and judgment for $5,000. The railroad company appeals.

The facts are as follows: The Indian Creek Coal Company had permission and authority from the railroad to build a tipple across its tracks at a point near Indian Head in McCreary County. The specifications for the work were furnished by the railroad company. The tipple was located about ten feet from the center of the track on one side, and about 20 feet from the center of the track on the other side. It was to extend across the track at an elevation of about 30 feet above the track. At the time of the accident complained of employees of the coal company had been engaged for about a week and a half in the work of constructing the tipple. Five men were regularly employed, and when it was necessary to raise the uprights as many as 15 or 20 men would then be employed. When Winningham was killed the work of connecting the two sides across the track had not been begun. In doing the work the men frequently passed from one side of the track to the other. About 800 or 900 feet north of the point where the tipple was being constructed is a private road crossing, and south of the tipple 500 or 600 feet is a public road crossing. Just prior to the time he was injured, Winningham, who was one of the employees of the coal company, crossed

the railroad track from the east to the west side, and had gone up the embankment on the west side for the purpose of getting some nails. The embankment begins to rise about ten feet from the track. As Winningham returned he walked towards the track looking straight in front of him. On account of the embankment it was impossible for Winningham to see further than 40 or 50 feet up the track, and it was likewise impossible for the engineer in charge of the train to see him until he got nearly on the track. When Winningham reached the track he was struck and killed by a southbound train. According to plaintiff's evidence the train was running about 40 or 50 miles an hour; according to defendant's evidence, from 15 to 20 miles an hour. When the engineer discovered Winningham he applied the brakes in emergency with one hand and grabbed for the whistle cord with the other, but missed it. By that time Winningham was struck. The train was stopped in about 20 car lengths. As the train came towards the tipple no warning of its approach was given. The engineer had not been over the road since the construction of the tipple began, and did not know that it was in process of erection.

The court in its instructions told the jury in substance that it was the duty of defendant in approaching the place where Winningham was killed to use ordinary care to give him timely and reasonable warning of the approach of the train by ringing the engine bell or sounding the whistle, and that if they believed from the evidence that those in charge of the engine failed to give such warning, and by reason thereof Winningham, while using ordinary care for his own safety, went upon the track and was killed by the train, they should find for the plaintiff, and unless they so believed they should find for the defendant. Other instructions defining ordinary care and the measure of damages and covering the question of contributory negligence were also given.

The railroad company insists that the court erred in refusing a peremptory. This contention is based on two grounds: (1) the place where the decedent was killed was not such as to impose on the railroad company the duty of giving warning of the approach of the train; (2) the decedent was guilty of contributory negligence.

(1) It is true that the decedent was not injured at a public crossing, or even at a private crossing where it was customary to give warning of the approach of a train, or in a city or town where the tracks of the company were used by large numbers of people. It is, therefore, argued that the duty of warning did not apply. It is of course difficult to lay down any general rule prescribing when or under what circumstances there is a duty to give warning of the approach of trains. In a general way that duty has been held to apply to places where the presence of persons on the track might be reasonably anticipated. In the present case the tipple had been in process of erection for about ten days. The railroad company had not only given the coal company authority to erect it, but had furnished the specifications. The work was being done immediately adjoining the track. Later on it was to be carried on over the track. There were five men regularly employed and at times from 15 to 20 men. In constructing the tipple it was necessary for these men to cross the track at frequent intervals. Indeed, if not required to cross the track they were at all times compelled to work so near the track that their position was one of constant danger. With their attention fixed on the work which they were required to do, it was practically impossible for them always to be on the alert to discover the approach of a train. It is not a case where men are temporarily engaged in doing work near the track. The company had authorized the construction of the tipple. On obtaining this authority the coal company began the work. The work had been going on about ten days. The company, therefore, was charged with notice that the work was going on. Taking into consideration the length of time the work had been going on, the number of men employed, the character of the work in which they were engaged, its proximity to the track, and the necessity for their crossing the track in the performance of their work and the constant danger to which they were thus exposed, we conclude that ordinary care on the part of those operating the train required them to anticipate the presence of persons on the track at that point, and, therefore, imposed upon them the duty of giving warning of the approach of the train. There being a duty on the part of the company to give such warning, the fact that the engineer in charge did not know that the tipple was in process of erection no more relieved it of liability than would the

ignorance of the engineer of the existence of a public road or a city absolve it from its duty to give warning of the approach of a train about to cross such public road or the streets of such city.

(2.)    But it is insisted that the evidence shows that decedent looked straight in front of him while approaching the track and made no effort to discover the approach of the train. It is, therefore, argued that he was guilty of contributory negligence as a matter of law. We have never adopted the stop, look and listen doctrine in this State. The doctrine of Smith's Admr. v. C., N. O. & T. P. Ry. Co., 146 Ky., 568, is not applicable. There the decedent was totally deaf. The only way he could discover the approach of the train was by the use of his eyes. Not having done this, it was held that he was guilty of contributory negligence. Here the decedent was in possession of all of his senses. It being the duty of the railroad company to give warning of the approach of the train, he had a right to act on the assumption that a warning would be given. Having the use of his hearing, the fact that he did not look is not conclusive of the question of contributory negligence. Ordinarily this is a question for the jury, and we see nothing in the facts of this case to take it out of the general rule.

Complaint is made of the fact that plaintiff was permitted to introduce evidence in regard to the failure of those in charge of the train to give warning of the approach of the train at certain crossings in the neighborhood of the tipple. Even if inadmissible, this evidence was not prejudicial, because the court in its instructions authorized a recovery only in the event those in charge of the engine failed to give reasonable warning of its approach to the tipple.

We see no error in the instructions. There was no conflict in the evidence. The facts being admitted, the question of the duty to warn was for the court, and, as before indicated, the court did not err in holding that this duty devolved upon the railroad.

Judgment affirmed.

Whole court sitting.