## Chesapeake & Ohio Railway Company v. Fraley.

(Decided June 4, 1929.)

BROWNING & REED, KIRK, KIRK & WELLS and B. F. COMBS for appellant.

ED. ALLEN and A. J. MAY for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The brief for appellee in this case was due, during the winter term of the court, but it was not filed until after the court had considered and decided this case. It is unfortunate that the attorneys representing the appellee left the whole burden on the court of searching out the authorities on which they rely to support the judgment.

The appellant operates a short branch line of railroad from Martin in Floyd county up the left fork of Beaver creek to Weeksbury in the same county. About one-half mile east of Martin is a public road crossing. In October, 1926, the appellee, while driving a Ford truck over this crossing, was struck by a freight train, and to some extent injured. He instituted suit to recover, and the jury award him a judgment for $1,000.

At the time of the collision the train causing the injury consisted of eight or nine cars, and was running from Martin to Weeksbury. The engine pulling the cars was backing with the tender in front. The petition charges negligence in many respects in the operation of the train, but a careful analysis of the evidence shows that the negligence mainly consisted in the alleged failure of the train to give warning of its approach to the crossing. There may be evidence growing out of the circumstances and physical facts tending to show that a proper lookout was not kept, although the positive evidence on the part of the engineer is that he was keeping a proper lookout, and he is contradicated by no witness. The evidence on the question of warnings is conflicting, with a slight preponderance supporting appellant. But the evidence tending to show that no signals were given was sufficient to uphold the verdict.

Appellant relies on contributory negligence, and insists that the evidence in the case shows that appellee was guilty of contributory negligence and that the trial court should have so held as a matter of law; but appellant frankly expresses some doubt as to the soundness of its position in this respect, and argues that, if an instruction should not have been given directing a verdict in its favor, the verdict is so against the great weight of the evidence on this point that it should not be allowed to stand.

The public road crosses the railroad at Martin, and then proceeds eastward parallel with the railroad about one-half mile, where it again crosses at the point where appellee was injured. When appellee crossed at Martin, the train was taking water near the crossing, and it pulled out about the time appellee started along the highway parallel to the railroad track. This placed the engine a short distance behind the appellee in his truck. The highway and the railroad track are in close proximity, and it appears that the highway is on the railroad right of way, at least a part of the distance. Appellee at times was 40 or 50 feet ahead of the train, and at other times the train drew up about alongside of him. When he got near the crossing, according to his statement, he stopped his truck about 25 feet from the crossing and looked down the track towards, Martin, which direction he could see from 150 to 200 feet, and also looked in the other direction, and perceived no train approaching in either direction. He drove onto the crossing, so he testified, at the rate of a mile to a mile and a half an hour. When the front wheels of his truck struck the rails of the track, they did not go over, and he reversed his engine, backed his truck so that he might have more power, and, as he was on the track, the tender struck him, so he says, like a clap of thunder. It is hard to understand why it is that he did not see the approaching train, or how it is that he did not know that it was proceeding towards the same point paralleling his own route. There is no proof that we find in the record showing that appellee saw, or heard, the train after he left Martin. We cannot hold, as a matter of law, that there was any duty on him to look for the train before he approached the crossing. When he drew near the crossing, according to his testimony, he stopped and looked both ways for the train. After having done this he drove upon the crossing, and while the physical facts and surrounding circumstances strongly tend to contradict his statement that he stopped and looked, yet the court should not have held as a matter of law that he was guilty of contributory negligence. His statement was entitled to consideration by the jury, and, if it is true, the train was not within 150 feet of the crossing at the time he stopped 25 feet away.

After all, it comes down to a question of veracity between the engineer and some of the other witnesses who testified for appellant on the one side, and appellee

on the other. According to the statement of appellee the train was not within 150 feet of the crossing when he stopped and looked for it, and if it ran onto him without signaling its approach after he had stopped and looked, it was negligence. The evidence of the engineer and some of the other witnesses is that appellee was driving his truck in plain view of the trainmen along the road, and those operating the train thought of a certainty that he would not attempt to cross in front of the train, as they thought he must know that the train was approaching as the bell was ringing, the whistle blowing, and it was in plain view. They state that appellee, without stopping, "dived" in front of the train when it was so close upon him that it was impossible to prevent the collision. If appellee stopped and looked, the train was not where the witnesses for appellant say it was. The contradictions in the evidence made a case for the jury, and since the jury must have believed that appellee stopped and looked for the train and there was none in sight, and that it ran onto him without giving any signals, we cannot say that there was no evidence, or not sufficient evidence, to justify that conclusion of the jury. Some of the witnesses must be very much mistaken about what happened.

The facts as we have stated them distinguish this case from the cases relied on by appellant on the point that the court should have held that appellee was guilty of contributory negligence as a matter of law. These cases are L. & N. R. Co. v. Hurst's Adm'r. 220 Ky. 402, 295 S. W. 458; Holder v. Illinois Central R. Co., 217 Ky. 759, 290 S. W. 698; Barrett's Admr. v. L. & N. R. Co., 206 Ky. 662, 268 S. W. 283; and certain others. The facts also distinguish the case from those relied on by appellant to show that the verdict is flagrantly against the weight of the evidence. These cases are L. & N. R. Co. v. Hurst's Adm'r, supra; Johnson's Adm'r v. L. & I. R. Co., 199 Ky. 524, 251 S. W. 843; and several others. It would only lengthen this opinion, without serving any useful purpose, to point out the distinctions. The case before us involves little more than a question of whether the facts were as stated by appellee, or as stated by witnesses for appellant.

Judgment affirmed.